WILLIAM E. HASSAN et al. *v.* THE CITY OF ROCHESTER et al.

(GENERAL TERM, FOURTH DEPARTMENT, DECEMBER, 1871.)

Whether the designation, by the common council of Rochester, of the portion of that city deemed to be benefited by a public improvement upon which they have determined, and their order directing the assessment upon all the owners and occupants of lands and houses within the portion so designated (see charter, L. 1861, §§ 191, 192, etc.), prohibits the assessors from omitting from assessment such parts of the designated territory as they regard as receiving no benefit, *quere.*

And whether the question may be raised in an action to have the tax declared void, and to restrain its collection, the common council having confirmed it.

But § 208 of the charter, which declares all assessments for local improvements valid, notwithstanding irregularity, omission or error in the proceedings relating to the same, renders the assessments valid although such omission is made.

THIS was an action by certain citizens and property owners of the city of Rochester whose property had been assessed for

the expense of opening a street in that city, and was brought against the city, its treasurer and collector of taxes, claiming to have the assessment declared void, a reassessment and an injunction.

The complaint set forth the powers of the common council of the city in respect to improvements of streets and the provisions of the city charter concerning their duties therein, and alleged in substance that the common council, in pursuance of the charter, had determined to improve Oak street, in said city, and on the 2d May, 1865, did enact and publish an ordinance for that purpose, by which it was substantially directed that the whole expense of the improvement, according to estimates made by the city surveyor, should be defrayed by an assessment upon the owners of houses and lands to be benefited, and which specified a portion of the city which the common council deemed would be benefited, and, after other provisions concerning the manner of payment, proceeded to direct the assessors of the city, as persons not interested, to make an assessment upon all the owners and occupants of lands and houses within the designated portion of the city of the amount of expense in proportion as nearly as might be to the advantage which each should be deemed to acquire by the making of the improvement, and it directed the assessors to meet at a time and place specified for the purpose.

And the complaint proceeded to state that the assessors therein named did not follow or obey the ordinance in respect to assessing the owners of territory in the ordinance designated, but omitted from the assessment a very large proportion and upward of 900 feet of territory fronting on Oak street; that the whole frontage assessed was 6,251 feet, and the expense per foot was four dollars and thirty-one cents.

That in consequence of such omission the expense of such improvement had fallen wholly upon the property assessed, the burden of which was increased thereby, inasmuch as the expense per foot in case the whole territory was assessed would be only some three dollars and fifty-nine cents per foot.

That the plaintiff's tax or assessment was greatly above

what it would have been had the order of the common council been complied with, and the regulations of the charter set forth, been followed; and it referred to a schedule annexed to show the difference which the mode of assessing made to each of the plaintiffs.

It also alleged that the plaintiffs were informed and believed that the assessment •had been ratified and confirmed by the common council.

And that no other proceedings were had by the common council, under the provisions of said charter or otherwise, modifying or in any degree changing the terms, conditions or provisions of the ordinance, or changing in any manner the territory to be assessed for the improvement.

And that the city treasurer had issued his warrant to the defendant, a collector appointed by him, commanding him to collect the amounts unpaid upon the assessment, with interest and collector's fees; and that Moshier was proceeding to collect the assessment as commanded, and threatened to sell the goods and chattels of the plaintiffs, if the assessments were not paid.

That the assessments were liens upon the lands of the said plaintiffs, respectively, and affected their disposition of them.

The defendants joined issue, asserting the legality of the proceedings and the validity of the assessment.

Upon the trial the plaintiffs' counsel opened the case with a statement of the facts set forth in the complaint, and that he would prove as alleged; whereupon the defendants' counsel moved for a nonsuit, on the ground that the action of the assessors and common council was conclusive, and could not be reviewed in this action; and, for the purpose of the motion, admitted the facts in the complaint to be true. The court granted the motion, and the plaintiffs excepted.

The court ordered that the case and exceptions be heard in the first instance at the General Term, and continued a preliminary injunction which had been granted.

Upon hearing at the General Term, the court denied a

new trial.   An opinion by Mr. Justice TALCOTT was rendered
as follows:

"TALCOTT, J.   The common council of the city of Rochester
initiated proceedings under the revised charter (Laws of 1861,
chap. 143) for the purpose of paving a part of Oak street, and
constructing crosswalks and sewers therein.   By section 165
it is provided that before the common council shall determine
to make any such improvement, they shall cause an estimate
to be made, and, by an entry in their minutes, describe the
portion or part of the city which they deem proper to be
assessed for the expense of such improvement.   They shall
cause notice to be published, specifying such improvement,
the estimated expense thereof, and the portion or part of the
city to be assessed for such expense, and requiring all persons
interested in the subject to attend the common council at the
time appointed in such notice.   At the time appointed in
the notice they shall proceed to hear the allegations of the
owners and occupants of houses and lots situated within the
portion or part of the city so described, and, after hearing
the same, shall make such further order in respect to such
improvement as they shall deem proper.   By section 191,
whenever the common council shall determine that the whole
or any part of the expense of any public improvement, not
requiring the taking of any land by said city, shall be
defrayed by an assessment upon the owners and occupants of
houses and lands to be benefited thereby, they shall declare
the same by an entry in their minutes, and, after ascertaining
the estimated expense, they shall declare, by an entry in their
minutes, whether the whole, or what portion thereof, shall
be assessed on such owners and occupants, specifying the sum
to be assessed and the portion of the city which they deem
will be benefited by such improvement.   By section 192 they
are required thereupon further to make what is termed in
section 191 a final ordinance, namely, an order reciting the
improvement intended to be made, the amount of expense
to be assessed, and the portion or part of the city on which
the same is to be assessed; and directing the assessors to

make an assessment upon all the owners and occupants of lands and houses within the portion or part so designated, of the amount of expense in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire by the making of such improvements, which order shall be certified by the clerk and delivered to one of the assessors, with the map or profile of the proposed improvement. Section 195 directs that the assessors shall proceed to make the assessment ' according to said order,' and return the roll to the council, who shall appoint a time at which it will hear appeals from the said assessment. By section 197 the clerk is required to publish notice of the return of the assessment to his office, and that the common council will, on such day as they shall have appointed, proceed to hear appeals from said assessment. Section 198 provides that, on the day appointed for that purpose, the common council shall hear the allegations and proofs of all persons who may complain of such assessment, and may rectify and amend the said assessment list in whole or in part, or may set the same aside and direct a new assessment, &c., or may ratify and confirm the assessment without any corrections, or with such corrections therein, as they may think proper. And section 199 declares that every assessment so ratified and confirmed by the common council shall be final and conclusive. The complaint substantially avers the proceedings to have been regular and according to the charter, down to the time when the assessors, entered upon their duties, but that the assessors, instead of assessing the expense upon ' all the owners and occupants of lands and houses within that portion or part so designated,' in point of fact omitted to assess any portion of the expense on upwards of 900 feet frontage out of 6,251 feet, which was the whole territory designated by the common council, and did not, as provided by the section 195, make the assessment ' according to the said order' of the council, but assessed only a part of the persons and property embraced within the purview of the said order, by reason whereof the residue of the owners and occupants are assessed more than their

due proportion of the expense of the proposed improvement. The complaint alleges that the common council has ratified and confirmed the assessment, without in any manner modifying the order, or its terms or provisions, and without changing in any manner the territory to be assessed for the improvement; that the plaintiffs, who are some of the parties assessed, and severally the owners of lands which are affected by the lien of the assessment, have applied to the common council to correct the assessment. That the council referred the matter to a committee, and the report of the committee is made a part of the complaint. The report admits the error of the assessors, and the injustice of the assessment, and recommends that the action of the council confirming the assessment be reconsidered, and the assessors be directed to make out a new roll, and include the omitted lands in their assessment. But the complaint alleges that the council has taken no action to modify, correct or set aside the assessment, and that the city treasurer his issued his warrant to collect the unpaid portions of the assessment, and the collector is proceeding to collect the assessment, and that the assessment purports to be a lien on the lands owned by the plaintiffs respectively. The plaintiff was nonsuited upon the ground that the complaint stated no cause of action.

" The answer relies upon the proceedings.

" The objection arising out of the attempt to unite the several parties plaintiff and their several interests in one action was waived, so far as the right to recover some form of judgment is concerned, by the omission to demur. The objection, that an action *quia timet* cannot be maintained, on the ground that the alleged illegality appears on the face of the proceedings, and therefore they cannot constitute a cloud upon the titles of the plaintiffs, does not apply to this case, because the city authorities may proceed to sell the land for the non-payment of the assessments, and in that case the charter provides that the certificate of sale (§ 104), and the lease subsequently to be executed, shall be presumptive

evidence of the regularity and validity of the proceedings. (*Allen* v. *The City of Buffalo*, 38 N. Y., 386.)

"I think the assessment was irregular. The assessors are by the statute required to assess according to the order, and the order directs the assessment to be made upon all the owners and occupants within the designated area. If the assessors, can omit one-sixth, they can omit five-sixths, or if in their opinion one lot owner only will derive a benefit from the proposed improvement, they may assess the whole expense upon him.

"It is claimed that the assessors act judicially in apportioning the assessment. That is true as to the amount of the entire expense to be assessed against each owner or occupant, for that is a matter for them to determine, but it is not true as to the lots to be embraced in the assessment.

"The discretion to judicially determine that question is by the statute committed, not to the assessors, but to the common council; and when the council has made the final ordinance, designating the lands upon which the expense is to be assessed, the statute is imperative that the assessors shall assess according to the order; that is, the assessment must be spread over the whole territory designated by the common council, which alone has the power to decide as to the area which will embrace all the lands deemed to be benefited by the proposed improvement, and which the assessors cannot either enlarge or diminish, except for a provision of the statute, to which I will now advert. I think the plaintiffs' complaint states a cause of action. But at this point we are confronted by a provision somewhat novel and extraordinary in a statute which authorizes the taking of private property for public use. The 208th section of the charter contains the following provision, viz.: 'And all assessments and reassessments heretofore made, or that hereafter may be made, for local public improvements, shall be and are hereby declared to be valid and effectual, notwithstanding any irregularity, omission or error in the proceeding relating to the same, and all questions concerning the same shall be determined in all places liberally

to sustain such proceedings, and with reference to the very right of the case, and not strictly.'

" I have been greatly surprised, since I discovered this provision of the statute, that no reference was made to it on the argument of the cause. I do not discover, nor was it suggested, that it has been in any way repealed, modified or limited.

" Assuming this provision to be in force, it seems to me that it is a perfect answer to the action, and to most, if not all, similar questions that may be made as to the legality of local assessment in the city of Rochester. The case presented by the plaintiffs is clearly within the very terms of the act.

" The facts alleged constitute an ' omission or error ' on the part of the assessors, notwithstanding which the statute declares the assessment shall be deemed to be valid and effectual. I will not inquire here what may be the limitations to be placed upon the effect of the provision I have quoted, or how far the legislature may go in this direction. Perhaps the omission of all notice to the party whose property is to be taken, and all opportunity on his part to be heard, would be beyond the power of legislation, as not being ' due process of law.'

" But in this case the statute provides for full and sufficient notice to the owners and occupants who are assessed, with ample opportunity for them to be heard, and to introduce proofs with a view to correct or set aside the assessment, and these provisions of the law were, for aught that is alleged by the plaintiffs, fully complied with.

" The result is that the citizens of Rochester seem, by the 208th section of the charter, to be, to a great extent, at least, deprived of the protection afforded by the ordinary rule of law, that officials who proceed to take private property for public use must comply with the substantial provisions of the statute under the authority of which they assume to act. In consequence of the provision of the 208th section which I have quoted, I think the nonsuit must be sustained, and judgment ordered for the defendants."

Motion for new trial denied, and judgment ordered for defendant, with costs.

The case was then reargued.

*George F. Danforth*, for the plaintiffs, contended that section 208 of the charter of the city of Rochester, if applicable, was repugnant to section 9, article 8, Constitution of New York, restricting " the power of assessment in cities, so as to prevent abuses in assessments." He also cited the provisions of the city charter (L. 1861, chap. 143, §§ 86, 191, 192), and contended that uniformity of assessment throughout the district was essential to the validity of the tax, and that no portion of the district could be exempted ; and he claimed that section 208 could apply only when the assessment was good in substance, citing *Ireland* v. *The City of Rochester* (51 Barb., 414).

*W. F. Cogswell*, for the defendant, contended that the question submitted to the assessors was of a judicial nature, and that their determination could not be reviewed collaterally (*Swift* v. *The City of Poughkeepsie*, 37 N. Y., 511 ; *Barhydt* v. *Shepard*, 35 id., 238 ; *People* v. *Board of Assessors of Albany*, 4 id., 154; *Foster* v. *Van Wyck*, 3 Trans. Apps., 196 ; *People* v. *Assessors of Brooklyn*, 39 id., 81) ; that the ordinance of the common council merely defined a territory within which the assessors should exercise their judgment, and that an owner deriving no benefit was properly assessed nothing, for that was his proper proportion ; that the city, having the assessment roll of the proper officers, could not be enjoined. (*Livingston* v. *Hollenback*, 4 Barb., 9 ; *Van Rensselaer* v. *Kidd*, id., 17 ; *Bouton* v. *City of Brooklyn*, 15 id., 375 ; *Susquehanna Bank* v. *The Supervisors of Broome*, 25 N. Y., 312; *Hasbrouck* v. *Kingston Board of Health*, 3 Keyes, 481 ; *Mepeck* v. *Supervisors of Columbia*, 15 Barb., 190 ; *Dodd* v. *City of Hartford*, 25 Conn., 232.) He also claimed that the complaint was defective in not stating that the owners and occupants of the

omitted premises acquired an advantage by the improvement, and cited section 208 of the charter as a complete answer to the action.

Present—MULLIN, P. J., and TALCOTT, J.

MULLIN, P. J.   When the common council of the city of Rochester have determined to cause a public improvement to be made, the expense of which should, in whole or in part, be borne by the persons benefited, they are required to declare whether the whole or what portion of the expense shall be assessed on such owner or occupants, specifying the sums to be assessed, and the portion of the city which they deem will be benefited by such improvement. (Charter of 1861, § 191.)

Section 192 provides, among other things, that the common council, after making the determination aforesaid, make an order directing the assessors to make an assessment, upon all the owners and occupants of lands and houses within the portion or part so designated, of the amount of the expense in proportion as nearly as may be to the advantage which each shall be deemed to acquire by the making of such improvements.

In the case before us the proceedings preceding the assessments are conceded to be regular.   The error relied upon to invalidate the assessment is, that the assessors omitted to assess some 900 feet of land lying within the portion of the city declared by the common council to be benefited by such improvement.   The position of the plaintiff's counsel is, that the determination that a portion of the city is benefited is a determination that every lot of land within such portion is thereby charged with a share of the expense in proportion to the benefit conferred.

On the other side, it is insisted that a determination that a portion of the city is benefited only fixes the limits within which the assessors are to apportion the expense, but it is for the assessors to determine which of the owners within

Hassan *v.* The City of Rochester.

such limits are benefited, and if there are any who are not benefited it is their duty to omit them altogether and assess it on those who are. If the plaintiffs' construction is right, then each lot within the prescribed boundaries must bear some part of the expense, whether in the opinion of the assessors they are actually benefited or are not. If the defendant's construction is the correct one, then the assessors are to omit from the assessment all lots not deemed by them to be benefited. We all know that it is very seldom, if ever, that a public improvement benefits the property of every owner within the limits within which the great majority of owners are actually and materially benefited. A sewer may be indispensible to the owners of the street in which it is laid, but from the conformation of the ground it may be impossible for one or more owners to drain into it, and they may have perfect drainage in a direction opposite to that of the sewer. Can such owners be said to be benefited by the sewer? And if not, upon what principle can they be charged with any portion of the expense of constructing it?

In a certain sense, all the inhabitants of a city or village are benefited by every public improvement made within it, and such benefit is usually in proportion to the proximity of the personal property to the improvement and the use he is able to make of it. But the benefit of a sewer in a street to a lot of land that is so far removed from it, or is so situated that it cannot drain into it, is so small as to be incapable of estimation, and is, therefore, not liable to be assessed for the expense.

It would be useless formality to assess upon a lot a mere nominal amount toward the expense of an improvement, and a statute should not be so construed as to require such an assessment, unless its language admits of no other construction.

It was indispensable that provision should be made for determining the limits within which persons should be deemed to be benefited by a public improvment, the whole or any part of the expense of which should be borne by those benefited.

Instead of leaving that queston to the assessors, as is some-times done, the legislature has seen fit to confer the power on the common council.

But the determination that those living within the limits prescribed by the common council is not a determination, nor was it intended to be a determination that every lot of land within such limits was benefited by such improvement.

To give it such an effect would be to declare to be true what every person outside of the common council would not unfrequently know to be false as well as unjust.

For these reasons, I am of the opinion that the determination, that a specified portion of the city is benefited by a public improvement, is not and was not designed to be a determination that each and every lot within such limits is to be deemed benefited by such improvement, but it merely prescribes the boundaries beyond which benefit is not conferred, and within which the assessors must assess the expenses of the improvement upon those whom they deem to be benefited.

The presumption of law is, that the assessors have properly discharged their duty in making the assessment in question, and the omission to assess any portion of the premises within the limits prescribed by the common council is presumed to have been because the persons or lands omitted were not deemed to be benefited by the improvement.

It was incumbent on the plaintiffs to allege in their complaint and to prove on the trial, if the allegation was denied, that the persons or lots omitted were not omitted because they were not benefited. But the complaint contains no such allegation, nor has any such proof been made. The presumption of law, that the persons omitted were omitted because they were not benefited, must prevail, and for that reason, if for no other, the plaintiff was properly nonsuited.

It is suggested, in the points of the defendant, that the lands omitted were part of the lands set apart by the State for the use of the Erie canal, but there is no proof that the lands are the property of the State.

Hassan *v.* The City of Rochester.

The question, therefore, whether the property of the State can be assessed for municipal purposes, does not arise.

By section 199 of the charter of 1861, it is declared that every assessment, when ratified and confirmed by the common council, shall be final and conclusive.

This precludes any examination of the propriety of the assessment by this court or other tribunal, until it is set aside in a proceeding to review it.

If it is void for any cause, the confirmation by the common council cannot make it valid; but, unless it is void, it must be enforced.

The learned counsel, who applied for a reargument, has failed to suggest any satisfactory reason for holding that the provisions of section 208 of the charter, which declares that all assessments, made after the passage of the act of which it forms a part, for local improvements, shall be and are thereby declared to be valid and effectual, notwithstanding any irregularity, omission or error in the proceedings relating to the same, does not apply and cure all irregularities and omissions in the assessment under consideration.

This is an assessment for a local public improvement made after the passage of the charter; and it is, therefore, within the very words of the section. If it does not apply to this assessment, and cure all irregularities, and omissions, and errors in it, then it is senseless and unmeaning.

The counsel for the plaintiff assumed that both the judges who heard the argument on the appeal concurred in the conclusion arrived at by Judge Talcott, that a determination of the common council that a portion of the city was benefited by the improvement, subjected every lot within that portion to assessment. This is a mistake I did not concur in that proposition, but did in regard to the effect of section 208.

The motion for a reargument was denied, with ten dollars costs.